**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **REBECCA SMITH, M.D.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 11-CV-691-TCK-FHM |
| | ) |
| **AHS OKLAHOMA HEART, LLC c/b/a** | ) |
| **OKLAHOMA HEART INSTITUTE,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court is Magistrate Judge Frank McCarthy's Report and Recommendation ("Report") (Doc. 20), wherein Judge McCarthy recommends that the Court grant Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 13). Plaintiff filed an Objection (Doc. 21), which is fully briefed. In her objection, Plaintiff argues that because Section 6.20(b) of the employment agreement mandates that fees be awarded to the prevailing party ("fee-shifting provision") and that any fee award is "binding, final, and conclusive," it is inconsistent with her statutory rights under Title VII and the Equal Pay Act ("EPA").[1] Plaintiff urges the Court to find

---

[1] In its entirety, Section 6.20 provides:

6.20   Conflict Resolution

(a)   Physician expressly agrees to attempt in good-faith to settle any disputes with the Group in connection with his rights and obligations under this Agreement in the event of a material breach of this Agreement by Physician or the Group.  Physician and the Group shall, prior to resorting to litigation or other legal recourse (except that either of them may file but not prosecute a complaint to preserve the statute of limitations or an injunction), work with and through the POC to resolve any disputes between them in connection with their rights and obligations under this Agreement in the event of a material breach of this Agreement by Physician or the Group.  If any such dispute cannot be resolved by the POC to the satisfaction of Physician and the Group within thirty (30) days of the first meeting to address the dispute, then either Physician or the Group may request in writing that

Section 6.20 unenforceable in its entirety and deny the motion to compel arbitration or, alternatively, to sever any unenforceable portions of Section 6.20 and compel arbitration under the remaining terms of Section 6.20. This is a new argument that was not previously raised by Plaintiff or addressed in the Report.[2]

---

the parties submit the dispute to arbitration as set forth below.

(b)   In the event the POC is unable to resolve the dispute between Physician and the Group, Physician or the Group may submit the matter to arbitration. Arbitration shall be scheduled within ninety (90) days of the date of the selection of the arbitration panel, to take place at a mutually agreeable time and location in Tulsa, Oklahoma. Such arbitration proceedings shall be conducted before three (3) arbitrators (unless Physician and the Group agree in writing to one arbitrator) in accordance with the rules of the American Health Lawyers Association. If Physician and the Group are unable to agree on a single arbitrator, Physician and the Group shall each appoint a person as an arbitrator designated as such by the American Health Lawyers Association. Such appointment shall be signified by a notice in writing by Physician and the Group. The arbitrators so appointed shall jointly appoint a third arbitrator who shall also be designated as an arbitrator by the American Health Lawyers Association. If either Physician or the Group fails to appoint an arbitrator for a period of thirty (30) days after receipt of a written notice from the other designating appointment of an arbitrator, then the arbitrator appointed by either Physician or the Group, giving such notice shall be deemed to have been approved by the other that failed to appoint an arbitrator and the matter shall be then heard by the single arbitrator appointed. *Attorneys' fees in connection with the arbitration and the other costs and expenses of arbitration shall be [shall be] awarded to the prevailing party. The decision and award of attorneys' fees of the arbitrator(s) shall be binding, final and conclusive on the Group and Physician.*

(Doc. 16-1 (emphasis added).)

[2] Plaintiff contends that she raised this argument in her response to the motion to compel arbitration. The Court disagrees. Plaintiff argued that Section 6.20(b)'s fee-shifting provision demonstrated the parties' intent to exclude her sex and pay discrimination claims from the scope of the arbitration agreement, not that the fee-shifting provision rendered the arbitration agreement unenforceable. Therefore, the Court does not construe the Report as addressing this argument. If and to the extent any language in the Report could be construed as inconsistent with this Opinion and Order, such language is overruled.

...

**I.    General Law**

"[A]greements which require arbitration of statutory claims are enforceable under the Federal Arbitration Act." *Shankle v. B-G Maintenance Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999). "[B]y submitting statutory claims to arbitration, an individual does not forgo substantive rights provided by the statute, but merely submits their resolution to an alternate forum." *Id.* "[T]he arbitral forum, like the judicial forum, provides an adequate mechanism for furthering public policy goals advanced by the statute." *Id.* As long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function. *See id.*

In *Shankle*, the Tenth Circuit addressed the distinct but related question of whether a provision requiring an employee to split arbitration fees with the employer was unenforceable under the Federal Arbitration Act ("FAA"). The court held that such a provision would cost the plaintiff between $1,875 and $5,000 and would prevent him from effectively vindicating his statutory cause of action in the arbitral forum. *Id.* at 1234-35. Therefore, the court held that the agreement was unenforceable under the FAA. *Id.* at 1235 ("Essentially, [the employer] required [the plaintiff] to agree to mandatory arbitration as a term of continued employment, yet failed to provide an accessible forum in which he could resolve his statutory rights. Such a result clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws.").

One year following *Shankle*, in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000), a plaintiff suing under the Truth in Lending Act and Equal Credit Opportunity Act sought to invalidate an arbitration agreement that was silent as to which party would bear fees and costs. The plaintiff argued that such silence "create[d] a 'risk' that she [would] be required to bear

3

prohibitive arbitration costs if she pursue[d] her claims in an arbitral forum, and thereby force [] her to forgo any claims." *Id.* The Supreme Court held that a mere risk that the plaintiff would "be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id*. at 91. Instead, the Court held that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

After *Green Tree*, the majority of circuits addressing the specific type of provision at issue in this case – a mandatory "loser pays" fee-shifting provisions that is contrary to fee-shifting provisions in federal anti-discrimination statutes – have held that such provisions do not render an arbitration agreement *per se* unenforceable. *See, e.g., Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1258-59 (11th Cir. 2003) ("After *Green Tree*, an arbitration agreement is not unenforceable merely because it may involve some 'fee-shifting.'") (collecting cases).[3] Instead, courts have held that the question of enforceability must be answered on a case-by-case basis, considering whether the party seeking to avoid arbitration "establish[es] that enforcement of the agreement would 'preclude' him from 'effectively vindicating [his] federal statutory right in the arbitral forum.'" *See id.* at 1259 (quoting *Green Tree*) ("Since *Green Tree*, all but one of the other Circuits that have reconsidered this issue have applied a similar case-by-case approach.").

These cases generally conclude that, because it is entirely speculative that the defendant will succeed and be awarded fees, the plaintiff cannot show that the fee-shifting provision prevents him from vindicating his statutory cause of action. *See, e.g., Musnick*, 325 F.3d at 1260 (holding that

---

[3] The Tenth Circuit has not addressed this specific type of provision, either before or after the Supreme Court decided *Green Tree*. *Musnick* is the case principally relied upon by Defendant.

the plaintiff had "adduced no evidence whatsoever to support his claim" and that "the risk alleged [namely – the shifting of attorney's fees] [was] simply too 'speculative' to render his agreement to arbitrate unenforceable") (collecting cases enforcing arbitration agreements including mandatory "loser pays" fee-shifting provisions);[4] *James v. Bobrick Washroom Equip., Inc.*, No. 09-145-KEW, 2010 WL 368727, at * 3 (E.D. Okla. Feb. 1, 2010) (holding that the plaintiff's "speculation as to whether he may be required to pay attorney's fees is simply too speculative a basis to invalidate the Agreement"). These courts further reason that the arbitrator may refuse to enforce the fee-shifting provision as an impermissible contractual limitation on the plaintiff's statutory remedies, which creates yet another layer of speculation as to whether the plaintiff will actually bear prohibitive costs. *See id.* at 1261 n.7; *see also Thompson v. Irwin Home Equity Corp.*, 300 F.3d 88, 92 (1st Cir. 2002) ("Arbitration is the correct initial forum for the [plaintiffs] to air their objection to the [loser pays] attorney's fees provision in the arbitration agreement.").

Finally, such courts reason, any fee award that shows manifest disregard of the law is subject to judicial review and reversal. *See, e.g., Musnick*, 325 F.3d at 1261 (explaining that arbitration award in violation of the plaintiff's statutory right to avoid paying defendant's fees may be vacated if such award shows a manifest disregard for the law). However, this reasoning has been called into question by subsequent Supreme Court decisions. *See Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 584-85 (2008) (holding that enumerated reasons in 9 U.S.C. §§ 10 and 11 constitute exclusive grounds for judicial review of arbitrator's decision and seeming to reject "'manifest disregard of the law' as a further ground for vacatur on top of those listed in § 10"); *see also Stolt-Nielsen S.A. v.*

---

[4] As explained in *Musnick*, "there is no record that could be made at this point" because whether a plaintiff will incur attorneys' fees "depends entirely on whether [she] prevails in arbitration." *Musnick*, 325 F.3d at 1261.

5

*AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1768 (2010) ("We do not decide whether 'manifest disregard' survives our decision in *Hall Street Associates* . . . as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10."). Therefore, this particular reasoning regarding the possibility of judicial review is of less persuasive value than at the time *Musnick* was decided.

In 2010, the Tenth Circuit analyzed whether the following provision rendered an arbitration agreement unenforceable:

> Each party shall pay for his/her/its own fees and expenses of arbitration except that the cost of the arbitrator and any filing fee exceeding the applicable filing fee in federal court shall be paid by the Company; provided, however, that all reasonable costs and fees necessarily incurred by any party are subject to reimbursement from the other party at the discretion of the arbitrator.

*Hill v. Ricoh Am. Corp.*, 603 F.3d 766, 779 (10th Cir. 2010). The plaintiff argued that this provision was inconsistent with his statutory rights under the Sarbanes-Oxley Act ("SOX"), which permits a successful plaintiff in a whistleblower action to recover attorney fees. The court rejected this argument, reasoning:

> Unlike in *Shankle*, nothing in the Employment Agreement's arbitration clause requires the arbitrator to deny Mr. Hill his rights under SOX. The clause gives the arbitrator discretion to award him attorney fees if he prevails on his SOX claim. And assuming, without deciding, that Mr. Hill is correct that SOX prohibits imposing attorney fees on an unsuccessful plaintiff, *nothing in the arbitration clause requires the arbitrator to compel him to pay Ricoh's attorney fees if he loses. Thus, the arbitrator has full authority to grant Mr. Hill the same SOX relief that he would receive in court.*

*Id.* at 779-80 (emphasis added). The court explained that the plaintiff's fear "that his SOX rights would not be vindicated [was] mere speculation" and was "based on an unsupported assumption that the arbitrator will be hostile to the substantive rights created by SOX." *Id.* at 780.

**II.     Analysis**

In this case, Plaintiff has demonstrated that enforcement of the fee-shifting provision in Section 6.20(b) would preclude her from effectively vindicating her Title VII and EPA claims in the arbitral forum. Under the current terms of the arbitration clause, Plaintiff is forced to commence arbitration subject to a *mandatory* "loser pays" fee-shifting provision. Such provision nullifies (1) her right under Title VII to bring a non-frivolous suit without risking paying her opponent's fees, and (2) her right under the EPA to bring any suit without risking paying her opponent's fees. This mandatory provision is distinguishable from the silent provision in *Green Tree* and the discretionary provision in *Hill*. Contrary to the arbitration clause at issue in *Hill*, the arbitration clause in this case does "require[] the arbitrator to compel [Plaintiff] to pay [Defendant's] attorney fees if [she] loses." *Hill*, 603 F.3d at 780. While not conclusive, this language indicates that the Tenth Circuit may have reached a different outcome had the fee-shifting provision been mandatory.

For two reasons, the Court declines to follow cases from other circuits that have specifically addressed mandatory "loser pays" fee-shifting provisions and reached different results. First, since these cases were decided, the Supreme Court has potentially eliminated "manifest disregard for the law" as grounds for judicial review of any fee award. *See Hall Street Assocs.*, 552 U.S. at 584-85. Second, the arbitration agreement in this case contains a contractual limitation, or at least attempted contractual limitation, on judicial review of any fee award in favor of Defendant. There was no similar contractual limitation in any case cited by Defendant. While the Court does not speculate as to the scope or effectiveness of this "final, binding, and conclusive" language, this is an additional fact that decreases Plaintiff's ability to effectively vindicate her statutory causes of action.

In sum, the Court finds that Plaintiff has met her burden of demonstrating unenforceability of the fee-shifting provision because: (1) the arbitration clause requires Plaintiff to pay Defendant's attorneys' fees if she does not prevail, which is inconsistent with Plaintiff's statutory rights under Title VII and the EPA; (2) the Supreme Court has potentially narrowed the scope of judicial review of arbitration awards since the time *Musnick* and other cases were decided, rendering it questionable whether a fee award in favor of Defendant could be overturned based on an arbitrator's "manifest disregard for the law;" (3) the arbitration clause contains language that limits or at least attempts to limit *any* judicial review of the fee award; and (4) dicta in Tenth Circuit precedent supports this conclusion.  The Court acknowledges that it is speculative whether Defendant will prevail and whether the arbitrator will ultimately award fees in a manner inconsistent with Title VII and/or the EPA.  However, in light of the narrow scope of judicial review and contractual limitation on judicial review, these speculative "risks" become, in this Court's view, so severe as to prevent Plaintiff from effectively vindicating her statutory causes of action in the arbitral forum.  Accordingly, the Court finds that the fee-shifting provision in Section 6.20(b) is unenforceable.

Next, the Court must determine whether to sever the unenforceable term or invalidate the entire arbitration clause.  Because "federal arbitration policy must be implemented in lock-step with a determination of contract validity under state law," this question is governed by the state law governing the contract.  *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 219 (3d Cir. 2003).  In this case, the contract is governed by Oklahoma law.  (*See* Doc. 16-1 at § 6.3.)  The Oklahoma Supreme Court, citing Restatement (Second) of Contracts § 184, has held that "if the discriminatory and hence unenforceable provision is not considered essential, the offending provision will be excised and the remaining portions of the contract will be enforced."  *Hargrave v. Canadian Valley Elec. Co-op.,*

*Inc.*, 792 P.2d 50, 60 (Okla. 1990).  In contrast, "if the discriminatory and hence unenforceable provision is not considered essential, the offending provision will be excised and the remaining portions of the contract will be enforced." *Id.*  The Court finds that the fee-shifting provision is not essential to the bargain and that severance is therefore the proper course.  *See Spinetti*, 324 F.3d at 219 (applying similar Pennsylvania law and Restatement (Second) of Contracts § 184) (concluding that severance was proper, even in absence of severability clause, because "the primary purpose of the arbitration bargain . . . was not to regulate costs or attorney's fees" but instead "was designed to provide a mechanism to resolve employment-related disputes").

### III.    Conclusion

Upon de novo review, the Report (Doc. 20) is AFFIRMED and ADOPTED as to all arguments previously made by the parties and addressed in the Report. Plaintiff's Objection (Doc. 21), which raises a new argument regarding the enforceability of the arbitration agreement, is GRANTED IN PART and DENIED IN PART for the reasons set forth in this Opinion and Order. Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 13) is GRANTED. However, the fee-shifting provision set forth in Section 6.20(b) is unenforceable and shall not be enforced by the arbitrator.  This matter shall be stayed pending arbitration, and Defendant is ordered to submit a status report within 20 days of the conclusion of the arbitration proceedings.

DATED THIS 3rd day of August, 2012.

**TERENCE KERN**
**United States District Judge**